RICHARD L. BROWN, ADMINISTRATOR OF THE ESTATE OF ALLEN B. CASH, DECEASED, APPELLANT, VS. MARY W. CASTELLAW ET AL., APPELLEES.

1. In an action of ejectment where both plaintiff and defendant rely upon tax deeds made by statute *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the assessor to the date of the deed inclusive and of title in the purchaser, the holder of the subsequent deed, in the absence of any showing successfully impeaching it, exhibits a superior right to recovery.

2. To maintain the action plaintiff introduced a tax deed issued to her, and made by statute *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the assessor to the date of the deed inclusive and of title in the purchaser, said deed reciting that the land was assessed to H. F. and J. W. Lucas, and was based upon a sale for the non-payment of taxes assessed for the year 1877. To impeach plaintiff's deed, defendant offered a prior tax deed to J. C. Greeley, also made by statute *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the assessor to the date of the deed inclusive and of title in the purchaser. On objection by plaintiff this deed was excluded by the court. Defendant then gave evidence that H. F. and J. W. Lucas did not occupy the land embraced in plaintiff's tax deed during the year 1877, and again offered the tax deed to Greeley in evidence, and the court again ruled it out: *Held*, That the exclusion of the deed when first offered was not error, as there was nothing then before the court to show that as a matter of fact the Lucases did not occupy the land in 1877, or that it was not properly assessed for that year; *Held further*, that although, as a general rule, recitals in tax deeds, in the absence of statutory regulations, are not evidence of the facts therein recited

as against the land-owner, yet where a party accepts a tax deed with a recital in it that the land was assessed to a certain individual during a named year, and introduces such deed as evidence of his right to recover, this will operate as an admission on his part, in the absence of any showing to the contrary, that such recital is true; *Further,* That the exclusion of the deed offered by defendant after it was shown that the Lucases did not occupy the land in 1877, was error, as the *prima facie* evidence furnished by said deed was that they did not own the land that year, and the evidence showed that they were not then in the occupancy of it.

3. A tax deed to a party issued in June, 1875, and made by statute *prima facie* evidence of the regularity of the proceedings from the valuation of the land by the assessor to the date of the deed inclusive and of title in the purchaser, and duly recorded, in the absence of any showing that the grantee in such deed had conveyed or alienated the land, is *prima facie* evidence that he was still owner of the land in 1877.

4. A defendant in possession seeking to defeat a recovery against him in an action of ejectment based upon a tax title, may introduce a prior tax deed to a third party and show in connection with it that the assessment upon which plaintiff's tax deed is based was not made to the owner or occupant when not assessed as unknown.

5. A tax deed executed by the clerk of the Circuit Court as county clerk, with the seal of the county court affixed, is in compliance with Chapter 1887, acts of 1872.

Appeal from the Circuit Court for Duval county.

STATEMENT.

The action is ejectment to recover possession of Lots 21 to 29 inclusive of a certain subdivision of the S. E. ¼ of S. W. ¼ of Section 7, Township 2, Range 27 East, according to map recorded in book "A O," page 100 of the records of Duval county, and including about the N. ½ of the E. ½ of the S. E. ¼ of the S. W. ¼ of Section 7, Township 2, Range 27 East. Appellees as plaintiffs in the Circuit Court obtained judgment against appellant for the lands described in the declaration.

Plaintiffs introduced in evidence an order of sale made by the county judge of Duval county on the petition of Sarah D. Brantley, administratrix of the estate of John Brantley, deceased, directing the sale of the S. W. ¼ of Section 7, Township 2, Range 27 East, with other lands, and also a deed made in pursuance of this order conveying the lands mentioned therein to Helen F. and John W. Lucas. This deed bears date November 14th, 1869, and was proven for record and recorded on the 2nd day of January, 1874. Plaintiffs also introduced a tax deed dated February 14th, 1888, to Mary W. Castellaw for the E. ½ of the S. E. ¼ of the S. W. ¼, Section 7, Township 2, Range 27 East. This deed was made by the clerk of the Circuit Court of Duval county, and is based upon a tax sale to the State in June, 1878, for non-payment of taxes assessed in 1877. After describing the land and reciting its sale to the State in 1878, this deed contains the following: "Assessed to H. F. and J. W. Lucas," and it was acknowledged and recorded on the 14th day of February, 1888. No objection was made to the introduction of the above-mentioned order and deeds. Proof was then made by a surveyor that he had surveyed the land described in the tax deed, and that it included the land described in the declaration. This was the case presented by plaintiffs.

The defendant offered in evidence a tax deed executed by Edwin Higgins, county clerk of Duval county, with the seal of the county clerk of Duval county affixed, dated the 11th day of June, 1875, to J. C. Greeley, purporting to convey the W. ½ of Section 7, Township 2, Range 27 East. The tax deed to Greeley recites that the lands were sold to him by the collector of revenue of Duval county on the 3rd day of March, 1873, for the non-payment of taxes levied and assessed

thereon for the year 1871, and it was acknowledged and recorded on the 11th day of June, 1875, the day of its execution. To the introduction of this deed plaintiffs objected on the grounds that it was incompetent and irrelevant, and could not be introduced until the deed under which plaintiffs claimed was shown by additional or other evidence to be of no force; that the tax deed from the clerk of the Circuit Court to Mary W. Castellaw, and introduced by plaintiffs, was subsequent to the deed offered by defendant and derived from the same source of title; and that the deed offered by defendant, if it conveyed any title, it was to a third person, and not the defendant, and that defendant should show an assessment of the land for the taxes for the year 1871 in connection with the offer of the deed in evidence. The Circuit Judge ruled that the deed should not be admitted alone as evidence of title against the title shown by plaintiffs, but that defendant might use it in connection with other proper evidence to show the invalidity of plaintiffs' deed. Defendant took exception to this ruling. Defendant then introduced J. C. Greeley, who testified that the land in question prior to the year 1878 was not occupied by any one, and that neither H. F. nor J. W. Lucas had ever been in possession or occupation of the land or any part of it. He also testified that he was president of the Florida Savings Bank and Real Estate Exchange, from which Allen Cash acquired title to the land in controversy, and that he (witness) knew that H. F. and J. W. Lucas claimed to own the land until they sold and conveyed the same to the Florida Savings Bank and Real Estate Exchange in 1882.

George Benjamin, another witness for defendant, testified that he had resided on land situated near the

land in controversy for a period of seventeen years,. and knew that the land involved in the suit was unoccupied by any one until about four years before the time of testifying, and that it was never occupied by the Lucases. He did not know the Brantleys, or whether they ever occupied any part of the land.

Defendant again offered in evidence the tax deed from Higgins, county clerk, to Greeley, and upon the same objections above mentioned the judge ruled that unless defendant had some other evidence to offer,. showing the invalidity of the tax deed to Mary W. Castellaw, introduced by plaintiffs, the deed so offered by him should not be admitted. This ruling was excepted to, and the parties having concluded their evidence, the case was submitted to the jury and a verdict rendered for plaintiffs.

The rulings of the Circuit Judge in refusing to admit the tax deed to Greeley, are assigned as error.

*R. B. Archibald* for Appellant.

*C. P. and J. C. Cooper* for Appellees.

MABRY, J., (after stating the facts:)

The subsequent tax deed to Mary W. Castellaw based upon a tax sale in 1878 for non-payment of the taxes in 1877, without being successfully impeached,. authorized a recovery on the part of the plaintiffs.. Spratt vs. Prince, 18 Fla., 289. In the body of this tax deed, following the description of the land conveyed, is the following recital, *viz:* "Assessed to H. F. and J. W. Lucas." A prior recorded deed to them for the land was also introduced. The object of introducing the tax deed to Greeley based upon a tax sale in 1873, for taxes assessed in 1871, was to show that

H. F. and J. W. Lucas did not own the land in 1877, and hence its assessment to them in that year, upon which plaintiffs' tax deed depended, was void. The assessment and sale upon which plaintiffs' tax deed rests were under the revenue act of 1874, Chapter 1976, laws of Florida. Section 6 of this act provides that "all the lands shall be assessed in the county, town, city, ward, or school district in which the same shall be; and every person shall be assessed in the city, county, town, ward and school district in which he resides when the assessment is made for all lands then owned by him within such county, city, town, ward or school district; but lands owned by one person and occupied by another may be assessed in the name of the owner or occupant, and lands not occupied or cultivated may be assessed as non-resident." The 60th section provides that the tax deed to be issued shall be *prima facie* evidence of the regularity of the proceedings, from the valuation of the land by the assessor to the date of the deed inclusive, and of title to the purchaser. The tax deed offered to be read in evidence by defendant was made under the revenue act of 1872, Chapter 1887, and it contains the same provision (Section 17) as the act of 1874 in reference to making the tax deed *prima facie* evidence of the regularity of the proceedings, from the valuation of the land by the assessor to the date of the deed inclusive, and of title in the purchaser.

If it be conceded that the recital in plaintiffs' tax deed showed that the land was assessed to H. F. and J. W. Lucas in 1877, and also that the tax deed offered by defendant was *prima facie* evidence that Greeley, and not the Lucases, owned the land that year, there was nothing to show when the deed was

14

first offered that the latter were not in possession of the land when assessed to them) The statute under which the assessment was made authorized the same to be made, when owned by one person and occupied by another, in the name of the owner or occupant. The deed was made *prima facie* evidence of the regularity of the assessment, that is, that the land was assessed to the proper person. When defendant first offered his tax deed there was no evidence before the court furnished by the deed itself, or otherwise, to impeach the *prima facie* regularity of the assessment in 1877, as shown by plaintiffs' deed, and we think that the court did not err in ruling it out.

Defendant, after making proof that H. F. and J. W. Lucas did not, as a matter of fact, occupy the land in 1877, again offered the tax deed in evidence, and the court again refused to admit it. If H. F. and J. W. Lucas neither owned the land in 1877, nor were then in the occupancy of it, the assessment upon which plaintiffs' deed was based was void, and the deed itself passed no title. L'Engle vs. Florida Central & Western R. R. Co., 21 Fla., 353; L'Engle vs. Wilson, *Ibid*, 461. It is contended by counsel for appellees that the recitals in the deed introduced by them furnish no evidence that the land was assessed to H. F. and J. W. Lucas in 1877. It is insisted that the form of the deed prescribed by the statute for use when plaintiffs' deed was executed nowhere contained the name or names of the party or parties to whom the land was assessed for taxes, for the non-payment of which it was sold, and that the recital in the deed before us in reference to the assessment to H. F. and J. W. Lucas was unauthorized and binds nobody. If the recital in the deed in this respect be rejected as surplusage, the *prima facie* evidence afforded by the

deed is that the land was properly assessed, and, in the absence of evidence *aliunde* that it was assessed to the Lucases, plaintiffs' tax deed would not in any way be impeached by the prior tax deed offered by defendant. It is contended by defendant, however, that the recital is at least *prima facie* evidence that the land was assessed to the Lucases in the year 1877. The general rule, independent of statutory regulation, is that a tax deed as against the land owner is not even *prima facie* evidence of the facts recited in it, as it is made in pursuance of a specially delegated power, and all proceedings prerequisite to the exercise of such power must be shown before the deed can be regarded as a valid conveyance of the land. Cooley on Taxa. tion, p. 517; Black on Tax Titles, secs. 246, 247. The statute under which plaintiffs' tax deed was executed provides that the deed shall be *prima facie* evidence of the regularity of the preceedings from the valuation of the land by the assessor to the date of the deed inclusive, and of title to the purchaser, and also that the deed shall be substantially in the form prescribed by it. In the form of the deed prescribed by the statute is a recital, among other things, of a sale of lands by the collector of revenue for the non-payment of taxes levied and assessed thereon for a specified year, and which remained unpaid on the day of sale, together with the costs and charges due, and a description of the land sold, the name of the purchaser and the amount of the purchase price are also given. In this deed there is no recital of the name of the party to whom the land is assessed. After making a tax sale the collector of revenue was required to enter in a book, to be prepared by him, a list of the lands sold, the date of sale, the number of certificate issued, the name of the owner as returned, a description of the

land sold, the name of the purchaser, and the amount for which the sale was made, leaving suitable margins for entries in case of redemption. A copy of the entries in this book, the form of which is prescribed by the statute, is required to be filed with the clerk, and the original book is filed with the Comptroller. Admitting that any recital in a tax deed not contained in the form prescribed by the statute, although the clerk making it had before him record evidence of the name of the owner returned, is not made *prima facie* correct by the statute, yet where a purchaser of a tax title accepts from the clerk a deed containing material recitals relating to and connected with the tax sale and offers it as evidence of his right to recover the land therein described, it will operate as an admission on his part that the recitals are true. It is his own deed and he relies upon it as evidence in the cause, and he thereby furnishes evidence against himself of the facts therein recited. Such recitals were evidently acceptable to him as he received the deed, and may have been put there at his instance. Although a grantee in a deed containing such recitals may not be conclusively bound by them, yet the acceptance of such a deed and the offering it in evidence in his behalf, in the absence of any showing to the contrary, will make the recitals therein evidence against him. The tax deed introduced by plaintiffs recites a sale of lands by the collector of revenue of Duval county for the non-payment of taxes levied and assessed thereon for the year 1877, and that the Comptroller became the purchaser of a certain described tract (embracing the land involved in this suit) for a mentioned sum. After the description of the land sold the deed recites the following, *viz:* "Assessed to H. F. and J. W. Lucas,.

which said sum was the whole amount of taxes due and unpaid on said tract of land for the year aforesaid, together with the interest and costs due thereon and the charges of such sale." It is evident that the assessment to the Lucases mentioned in the deed is of the land described therein and for the year 1877, and the rejection of the deed offered by defendant for the reason that it was not shown that the land was assessed to H. F. and J. W. Lucas in 1877, can not be sustained.

It is further insisted that as the evidence showed a conveyance of the land to H. F. and J. W. Lucas in 1869, and that they claimed to own it until 1882, when they sold it to the Florida Savings Bank and Real Estate Exchange, an assessment to them in 1877 was proper and legal. The tax deed to Greeley, recorded in June, 1885, was *prima facie* evidence of title in him, and, without evidence to impeach it, divested all the title out of the Lucases acquired by the conveyance to them in 1869. After the recording of Greeley's tax deed in 1875 the record evidence then was that he was owner, and as the Lucases were not in possession, the land could not on this showing have been legally assessed to them. The deed offered by defendant would have furnished *prima facie* evidence that the recorded title of the Lucases had been extinguished, and a claim of ownership of the land without avoiding in some way the tax deed, would not have made them owners. Conceding the *prima facie* validity of the tax deed to Greeley, he was owner in 1877, and not the Lucases.

Another objection to the introduction of the deed is that no evidence was introduced to show that Greeley still owned the land under the tax deed issued to him in 1875, and for aught that appeared, he may have quit-claimed it back to the Lucases before 1877. In

order to show that Greeley, and not the Lucases owned the land in 1877, the tax deed to Greeley issued in June, 1875, was offered in evidence. If the title was vested in Greeley in June, 1875, it remained in him until divested in some way recognized by law, and in the absence of any showing to the contrary, would still be in him in 1877. Hewitt vs. Butterfield, 52 Wis., 384. Counsel for appellees say "this deed can not be said to be admissible as tending to prove ownership in Greeley, because the court only ruled it it out when defendant below admitted that was all the evidence he had to offer, and said tax deed to Greeley alone, or considered with the testimony offered, was not admissible." What more was necessary to show title in Greeley in 1877 than to introduce a deed vesting the title in him prior to that date? The court can not assume, in the absence of any showing, that Greeley reconveyed the land to the Lucases, or any one else before 1877, and if such was the case it was the place of plaintiffs to have inquired into it and made it appear. The tax deed being *prima facie* evidence of title in Greeley in June, 1875, defendant had a right to rely upon it as *prima facie* evidence of title in him in 1877, and there is no force in the objection stated.

Another objection is that defendant and plaintiffs claim title through and under the same source of title, and that defendant can not be permitted to show title in a third party. This contention is based upon the evidence of Greeley that the Lucases claimed to own the land in controversy in 1882, when they sold it to the Florida Savings Bank and Real Estate Exchange, and that the bank sold it to Cash, of whose estate defendant is administrator. It is true Greeley testified that the Lucases claimed to own the land down to

1882, when they sold it to the Florida Savings Bank and Real Estate Exchange, and that Allen Cash acquired title from the bank, but this does not show that the defendant was defending on the title derived from the Lucases through the bank. He did not offer any deeds of conveyance under this source of title, and was content to rely upon the tax deed to Greeley to defeat the plaintiffs' deed. We do not concede that where both parties in an action of ejectment claim under the State through successive tax titles, either would be precluded from denying the validity of the other's deed; but, without deciding this, we have presented by the record the case of a defendant in possession seeking to defeat a recovery against him based on a tax title, by showing that the assessment upon which the tax deed rests was illegal, and if he can accomplish this, plaintiffs' deed was void, and they were not entitled to recover. The tax deed offered by defendant embraced the land in controversy, was in compliance with the statute, and was made *prima facie* evidence of title in Greeley at the time of the assessment in 1877. The land was assessed to the Lucases, and it was shown that they were not at the time of the assessment in possession, and we think that the court erred in excluding the deed offered by the defendant.

It is further objected by counsel for appellees that the tax deed offered by defendant below should have been executed by Edwin Higgins, as clerk of the Circuit Court of Duval county, under the seal of that court, and not as county clerk, with the seal of the county court attached. It is insisted by appellant's counsel that this objection was not raised in the trial court, and can not be made here. It does not appear that the objections made in the Circuit Court, and the rulings of the court thereon, rejecting the deed, in-

clude the one just mentioned; but waiving the point as to the right of plaintiffs to raise the objection here, we think it can not be sustained. The act under which defendants' deed was executed provides that it shall be executed by the county clerk, with the seal of the county court affixed, and in this respect it was in compliance with the statute. The county clerk and circuit clerk were one and the same officer under the Constitution of 1868, and he is the officer referred to in the act of 1872 as the one to make the deed. Sams vs. King, 18 Fla., 557. The county court has a seal, and under the former Constitution of 1868 the circuit clerk was also clerk of the county court. Stockton vs. Powell, 19 Fla. 1, 10 South. Rep., 688. A deed executed by this officer as circuit clerk was held to be good in the case of Sams vs. King, and any substantial compliance with the statutory form will be sufficient. But the authorities are uniform that where the legislature has prescribed the form of a deed, a compliance with it must be held good; and this being the case, the objection raised can not be sustained. Cooley on Taxation, 515; Black on Tax Titles, Section 211; Bell vs. Gordon, 55 Miss., 45.

The court erred in refusing to permit defendant to introduce the tax deed to J. C. Greeley, and for this ruling the judgment must be reversed for a new trial, and it is so ordered.