McMILLIN, C.J.,
for the Court:
¶ 1. This case involves a dispute between an executor of a testatrix’s estate and a beneficiary under the will over the co-executors’ fee request. Two disputes are presented to this Court for resolution. One involves the chancellor’s decision to deny both co-executors’ requests to be reimbursed for certain out-of-pocket expenses. The other, a more substantial dispute, involves the chancellor’s denial of one co-executor’s request for compensation in an amount of approximately $48,000. That request was denied based on the fact that the co-executor’s law firm was providing legal services to the estate for which compensation was being separately sought. In the view of the chancellor, “a fiduciary may not claim for himself a double fee acting individually as an executor and as an attorney.” Because it involves an unsettled issue of statutory interpretation, we will deal first with this latter issue.
I.
Facts
¶ 2. Frances W. Thomas died in 1988 leaving a will that distributed an estate valued in excess of $6,000,000 among her two daughters, Frances Evans and Ann Wells, and a number of grandchildren. In her will, Thomas named T. Calvin Wells, John P. Wells, and William P. Wells as co-executors of the estate. The co-executors were the sons of Ann Wells, one of the decedent’s daughters. T. Calvin Wells was also a practicing attorney and a member of a multi-member law firm.
¶ 3. The probate of this estate was anything but smooth. It began with an unsuccessful contest of the will itself by Frances Evans. Thereafter, there seems to have been a continuing conflict between those competing forces aligned with the two daughters of the testatrix. The dispute came to a head when the co-executors, as a *334 part of their third annual accounting to the chancellor, submitted the fee requests discussed above. Evans, in her capacity as a beneficiary, filed a formal protest to the allowance of such fees, alleging that “the executor and his law firm have charged both executor fees and attorney’s fees which Frances Pope Evans objects to and requests the Court to disallow.” (The request for payment by the co-executors had also included separate claims by two of the co-executors for reimbursement for some travel expenses and long distance telephone calls. Evans’s objection did not specifically address the separate request of the non-attorney co-executor.)
¶ 4. The chancellor found that the services rendered by other members of the co-executor’s law firm had benefitted the estate and ordered those fees to be paid. However, he denied any further payment to either co-executor beyond those amounts previously allowed in connection with earlier interim accountings. The primary effect of this ruling was to disallow T. Calvin Wells’s rather substantial statement for services since it appears that the remaining co-executors were either not active in the probate proceedings or, if they were, elected not to seek compensation for their work. Nevertheless, the chancellor’s ruling, without separately addressing William P. Wells’s claim for expenses, had the effect of disallowing that claim.
A.
The Issue of a Double Fee
¶ 5. We cannot determine exactly what the chancellor intended by the above-quoted remark that a fiduciary may not “claim for himself a double fee.” If he meant to prohibit the practice of an executor requesting two separate fees for the same services, then we would think his remarks to be entirely correct. However, the facts of this case do not permit so simple a resolution of the problem facing the Court. The co-executor in this case submitted an itemized statement of his work, and his law firm submitted a separate itemized statement for work claimed to have been done on behalf of the estate by members of the firm other than the co-executor. There is no explicit claim that these two separate billings contained any duplication of services to the estate. Rather, the chancellor decided the case on the more fundamental notion that an attorney acting as an executor must make an election as to whether he will be compensated for his work as the fiduciary of the estate or in his role of providing legal services on behalf of the estate.
¶ 6. It was Evans’s view (shared by the chancellor) that there was no distinction to be drawn simply because the separate claim for legal fees was submitted by the co-executor’s law firm and represented services performed by attorneys in the firm other than the co-executor himself. In this view, the prohibition against two separate claims for compensation must be decided exactly as if the co-executor had been a sole practitioner and had physically performed all the services himself. We conclude that this is the proper way to treat the matter for purposes of analysis and will proceed with our discussion in that light.
¶ 7. Evans argues that the issue before the court has long since been decided against the co-executor in the' case of Owen v. Stoner, 148 Miss. 897, 114 So. 613 (1927). In that case, Stoner was an attorney who was named executor of the estate of McGehee. In his final accounting, Stoner asked that he “be allowed a reasonable attorney’s fee in this behalf.” Id. at 405, 114 So. at 613. The chancellor permitted Stoner a fee of $2,000 and the beneficiaries under the will appealed. Id. at 405, 114 So. at 614. The Mississippi Supreme Court reversed the award, saying it was not proper under the statute concerning such matters for the chancellor to assess attorney’s fees directly against the estate. Id. at 407, 114 So. at 614. The court remanded for the chancellor, instead, to set “such commissions as the court may *335 find should be allowed the appellee [Stoner] as executor of this estate, under the law.” Id. at 410,114 So. at 615.
¶ 8. We do not find the Owen v. Stoner case particularly helpful. That case was decided upon principles of law that even the most seasoned estate attorney might find shocking in view of the way that common sense (in the form of statutory enactment) has long since overridden common law. The rationale of Owen v. Stoner begins with the proposition that, at common law, the position of executor of a decedent’s estate was one of honor and trust, so that the idea that one would, in addition to this signal honor, expect monetary payment was unheard of. Id. at 406, 114 So. at 614. Attached to this principle against compensating an executor was the corollary that, if the executor required the assistance of counsel in discharging the duties of his honorific position, the expense was personal to the executor and not one for which he could be reimbursed. Id. at 406-407, 114 So. at 614. The Mississippi Legislature long ago saw fit to statutorily alter these common law principles that sound noble on their face but, perhaps, in the rough-and-tumble of the real world, were serving to discourage qualified people from undertaking the duties of such office solely for the glory that might attach to the position. First, the Legislature adopted a statute permitting the chancellor to make a reasonable allowance out of the estate to the executor as compensation for his services. Then, it adopted another statute that permitted the executor, in requesting compensation for his services, to include a reasonable amount for payments the executor may have made to an attorney assisting him in the discharge of his 'fiduciary duties. Id. at 407,114 So. at 614.
¶ 9. Owen v. Stoner, contrary to arguments advanced to this Court, was not decided against Stoner because he sought double compensation. The case makes quite clear that “ the question of commissions to the executor is not under review for the reason that the executor neither asks for nor was allowed commissions in the court below.” Id. at 406, 114 So. at 614. Rather, the case was decided on the principle of strict statutory construction of a statute that has since been the subject of a major revision. At the time, the implicated statute said that “[i]n annual and final settlements, the executor ... shall be entitled to credit for such reasonable sums as he may have paid for the services of an attorney in the management ... of the estate.... ” Id. at 407, 114 So. at 614 (quoting section 1875, Hemingway’s Code 1927) (emphasis supplied). The court, in effect, ruled that it was logically impossible for an executor to hire himself, pay himself a fee, and then seek reimbursement under the statute for that expenditure. It refused to permit what it called Stoner’s attempt to circumvent the requirements of the statute and make the estate itself primarily liable for payment of attorney’s fees. It is at least arguable that the same result would have been reached if Stoner had, in fact, retained other counsel but had not actually paid the attorney, seeking instead to have the fees become a direct charge on estate assets.
¶ 10. It is because (a) Owen v. Stoner does not deal with the question of double compensation, and (b) the statute regarding an executor’s ability to retain himself to perform legal services for the estate has been materially amended since the decision in Owen v. Stoner, that we find the decision unhelpful. More particularly, the successor to the quoted section from Hemingway’s Code now provides that “[w]here the executor ... acts also as attorney, the court may allow such executor ... credit for his reasonable compensation as attorney in lieu of his compensation as executor .... ” Miss.Code Ann. § 91-7-281 (Rev.1994).
¶ 11. By way of additional background to the matter now before the Court, it is important to note another substantial up- . heaval of the law of compensating an executor. Until 1989, the applicable statute said that the fiduciary was entitled to “not *336 less than one nor more than seven per centum on the amount of the estate administered .... ” Miss.Code Ann. § 91-7-299 (1972) (amended 1989). However, since 1989, the statute has provided that:
The court shall allow to an executor ... such sum as the court deems proper considering the value and worth of the estate and considering the extent or degree of difficulty of the duties discharged by the executor....
Miss.Code Ann. § 91-7-299 (Rev.1994).
¶ 12. Thus, the new statute necessarily requires the chancellor to focus significant attention on an itemized description of the services performed by the executor, whereas, under the more general terms of the predecessor statute, such scrutiny may not have been mandatory. Under the revised statute, without such itemization, it would be impossible for the chancellor to assess “the extent ... of the [executor’s] duties.” In apparent recognition of this fact, Uniform Chancery Court Rule 6.11 says that a petition by a fiduciary for compensation “shall show ... the nature and extent of the service rendered.... ” This requirement of itemization of services, even in the case where the same individual is acting in a dual capacity as fiduciary and as attorney for the estate, would seem to safeguard against a claim for duplicative payments — a safeguard that logically could not exist under the former section 91-7-299 that set the fiduciary’s compensation as nothing more than an appropriate percentage of the estate’s assets.
¶ 13. With this prolonged and possibly tedious — but, nevertheless, necessary— prologue in mind, we can now begin to focus on the particular facts and arguments now before us. Evans argues that, in the ease where an executor also happens to be an attorney, that fiduciary is put to an across-the-board election in regard to compensation. This conclusion, Evans contends, is mandated by the previously quoted language of section 91-7-281 that reasonable compensation allowed him for his legal work is “in lieu of his compensation as executor....” Miss.Code Ann. § 91-7-281 (Rev.1994) (emphasis supplied).
¶ 14. The co-executor counters with the argument that the distinction between whether an individual seeking compensation for itemized services rendered to an estate presents his itemization in his capacity as the executor or as an attorney is now largely irrelevant. According to the co-executor’s reasoning, the nature of the service, if properly itemized and described, can be determined and a proper level of compensation for that service set, taking into account all reasonable factors that would affect the value of that service to the estate, whether any particular service is of a legal nature or is simply one of the myriad administrative duties of a fiduciary for which a license to practice law is not needed. We find this argument persuasive. The statute outlining the proper considerations for setting an executor’s fee requires the chancellor to consider the size of the estate as well as the quantity and the difficulty of the work performed by the executor. Miss.Code Ann. § 91-7-299 (Rev.1994). In those instances where the fiduciary is also an attorney and performs necessary legal services that otherwise would have had to be performed by a retained attorney, it would appear that both the “extent and degree of difficulty” of the fiduciary’s duties would be greater than would otherwise exist and could be taken into consideration when setting a fair level of compensation. Miss.Code Ann. § 91-7-299 (Rev.1994). Alternatively, as to those separate services that were unquestionably performed in the role of an attorney, the statutes would seem to permit the executor to seek payment at the prevailing rate for such legal services under section 91-7-281. The difference appears much more a matter of form than real substance and we see no reason that the proper level of compensation to an executor ought to vary appreciably depending on such a trivial point as whether *337 the caption of the itemization of services identified the requester as an attorney or as an executor.
¶ 15. We do not discover in the “in lieu” provision of section 91-7-281 the requirement for the blanket “either-or” election that Evans argues for, so long as the two applications for compensation do not reflect any duplicative billing for the same service. Rather, we conclude that, as long as no duplication of services is shown, these compensation statutes do not prevent an executor from seeking payment for services rendered purely in his fiduciary capacity that may not necessarily involve legal work, while, at the same time, seeking additional compensation for other work of a purely legal nature in lieu of payment for those other discrete services as the fiduciary. That conclusion would necessarily extend to legal services provided by members of the fiduciary’s law firm undertaken in lieu of having the fiduciary provide them himself.
¶ 16. In order to understand our reasoning on this point, it is necessary to remember that, prior to the 1989 amendment to section 91-7-299, the fiduciary’s compensation was based purely on an appropriate percentage of the size of the estate. It said that “[t]he court shall allow to an executor ... as compensation for his trouble ... not less than one nor more than seven percentum of the amount of the estate administered.... ” Miss.Code Ann. § 91-7-299(1972) (amended 1989). Under that scheme of compensation, there was no requirement in the statute that a fiduciary itemize his services to the estate. The determination of a proper percentage to award as compensation was a matter entrusted to the sound discretion of the chancellor. Ralston v. Bank of Clarksdale, 188 Miss. 345, 194 So. 923, 924 (1940). Once that proper percentage of compensation was determined, however, it would necessarily be the case that the amount allowed covered all work done by the fiduciary. If the fiduciary were also an attorney who provided necessary legal services (either directly by his own hand or with the assistance of members of his firm), then certainly the chancellor would, in the exercise of his discretion, be required to consider the benefit of those services to the estate in deciding at what' point on the sliding scale between one percent and seven percent to set the level of compensation. If that were the case, then it is apparent that, to also allow the fiduciary to seek separate compensation as an attorney for the same legal services that were used to increase his percentage of allowance as the executor would constitute double compensation — a practice prohibited by notions of equity and fairness so fundamental as to be beyond argument, though not specifically prohibited by the Owen v. Stoner decision.
¶ 17. That potential for double compensation, however, does not exist under the amended version of section 91-7-299, at least in the circumstance where the fiduciary fully itemizes his services in order to show the “extent” and “degree of difficulty” of his work and any separate legal work is separately itemized. Miss.Code Ann. § 91-7-299 (Rev.1994).
¶ 18. Evans’s argument that the election must be “across the board,” and that a fiduciary must seek all of his compensation in one capacity or the other is not supported by any binding authority. In light of the 1989 amendment to section 91-7-299, we find such a strict and arbitrary reading of the statute to be both unnecessary and one likely to produce an inequitable result. In many estates, much of what the fiduciary is compelled to do in carrying out his duties may consist of duties that are rather mundane. Inventorying household goods and personal possessions, and seeing to the preservation of, or proper disposition of, such assets, by way of example, may well be the legitimate duty of the executor, but these are duties that, to a large extent, do not require the expertise of an attorney to actually complete. On the other hand, there may be complex legal issues involving such matters as liq *338 uidating investments, disposing of real property, evaluating questionable claims against the estate, and a myriad of other matters where an experienced attorney is indispensable. In those cases where the fiduciary is also an. attorney, we think there are compelling reasons to suggest that the attorney should not be compensated at an unnecessarily high rate for performing time-consuming but largely unskilled services to the estate simply because of his professional status. On the other hand, when the executor is also an attorney and can, through the exercise of his training and experience, handle many of the more complex legal matters involved in probating an estate without the necessity of retaining another attorney, that service, even when compensated at the prevailing rate for attorney’s fees in that area of practice, represents an economy to the estate.
¶ 19. For that reason, we see no prohibition in the statute that would prevent a fiduciary who is also an attorney from petitioning for some part of his itemized services to be paid under section 91-7-299, where his right to compensation would not necessarily be commensurate with prevailing legal fees, and we further find no prohibition for that same fiduciary, as to those separately identified services that were unquestionably performed in his capacity as an attorney, seeking compensation under Section 91-7-281, in lieu of being paid for those particular services under section 91-7-299. In keeping with this concept, we further note that the award of fees under either theory of compensation is a matter vested in the sound discretion of the chancellor. For that reason, it may well be that, despite the language of section 91-7-281, the chancellor would be acting within his discretion were he to investigate a fiduciary’s request for “in lieu” compensation as an attorney and determine that, as to some portion of the services, the nature of the work did not merit compensation at the prevailing rate for an attorney’s services and, for that reason, set the proper compensation as to those services under section 91-7-299.
¶ 20. Thus, we conclude that the chancellor was manifestly in error when he concluded that the co-executor in this case was prohibited by statute or by case law from seeking compensation for those separate services provided by him as co-executor solely because other members of his law firm were also seeking compensation for what were, at least, on their face, separate necessary legal services to the estate.
¶ 21. Finally, we note that a fiduciary’s compensation under section 91-7-299 is affected, not only by the amount and degree of difficulty of his work, but also by “the value and worth of the estate.” Miss. Code Ann. § 91-7-299 (Rev.1994). This would appear to be an added consideration that has the potential to cut two ways. It may be that, in the case of a large but relatively uncomplicated estate, the fiduciary may be entitled to some measure of extra compensation based solely on the magnitude of the responsibility placed on his shoulders. On the other hand, in the case of a smaller estate, it could be that, in attempting to deal equitably with the beneficiaries, the chancellor might be constrained to limit the fiduciary’s compensation to something less than full payment, leaving the fiduciary to enjoy the common law “honor” of having served well in a position of trust as a part of his reward.
¶ 22. We, therefore, reverse and remand this matter for further hearing, at which the following issues, among others, must be resolved:
(a) Whether those itemized services on the co-executor’s request were, in fact, necessary and of benefit to the estate, and not designed to primarily benefit something less than all of the beneficiaries.
(b) What is the proper measure of compensation for those services under section 91-7-299, taking into consideration the “worth of the estate” and “the extent or degree of difficulty of the duties,” and keeping in mind that the hourly rate for an *339 attorney doing estate work may or may not be a proper consideration as to any particular item of service. As to this matter, the chancellor must also consider “the value and worth of the estate,” which, necessarily requires the chancellor to review all past compensation to the co-executor in determining a final award.
(c) Whether, in the separate compensation request filed by the co-executor’s law firm, there are items of overlap (such as unnecessary multiple representation at hearings) that might result in double compensation for essentially the same service to the estate if a related charge were to be allowed to the co-executor.
¶ 23. Though we do not address the issue separately, we observe that our decision necessarily encompasses the chancellor’s decision to deny William Wells’s expense reimbursement request. That request should be reevaluated by the chancellor using those considerations that are appropriate under section 91-7-299.
¶ 24. THE JUDGMENT OF THE CHANCERY COURT OF LOWNDES COUNTY IS REVERSED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. THE COSTS OF THE APPEAL ARE TAXED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.
PAYNE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, J.